STATE OF NORTH CAROLINA v. JOE CECIL INGRAM, OTTO SEAWOOD, JR., AND CHARLES ERVIN.

(Filed 11 October, 1967.)

1. Criminal Law § 124; Larceny § 9; Burglary § 7—

In a prosecution under an indictment charging felonious breaking and entering, a verdict of guilty of larceny of goods of a value of more than $200.00 without reference to the indictment is not sufficient to support judgment, and the Supreme Court *ex mero motu* will vacate the judgment and order a new trial.

2. Larceny § 4; Burglary § 3—

An indictment describing stolen property as "merchandise, chattels, money, valuable securities and other personal property" is fatally defective where the proof shows the property to have been eleven rings, since the indictment must describe the property stolen with sufficient particularity to protect defendant from a second prosecution.

3. Indictment § 13—

The office of a bill of particulars is to furnish defendant further information not required to be set out in the indictment, G.S. 15-143, and a bill of particulars cannot cure a fatal defect in an indictment.

4. Indictment § 15; Criminal Law § 127—

The motion to quash is directed only to patent defects in the pleadings, while a motion in arrest of judgment may be directed to patent defects in the pleadings, verdict, or other parts of the record proper.

5. Indictment § 16—

The quashal of an indictment for failing properly to charge an offense will not bar further prosecution.

APPEAL by defendants from *Froneberger, J.,* July 10, 1967 Criminal Session of GASTON.

Defendants Joe Cecil Ingram and Charles Ervin were each charged in separate bills of indictment with the crimes of felonious breaking and entering on one count and felonious larceny of goods of the value of more than $200.00 on another count.

Defendant Otto Seawood, Jr., was charged in a bill of indictment with felonious breaking and entering. The cases were consolidated for trial. Before pleading to the charges in the bills of indictment, each defendant made a motion to quash the bills of indictments. The motions were denied. All defendants then entered pleas of not guilty.

Evidence pertinent to the decision of this case tends to show that on the morning of 3 May 1967, at about 8:45 o'clock, defendants Ingram, Seawood and Ervin entered a jewelry store known as Thomas Jewelers, located in Cherryville, North Carolina. Upon entry, Seawood spoke to Ingram and pointed to the show case containing rings, located at the front of the store. Defendants Seawood and Ervin then moved to another part of the store. Ingram told Mr. Thomas, owner of the store, that he was interested in looking at something for a six-year old girl, whereupon Mr. Thomas turned on the rotating ring case for his inspection. Mr. Thomas then went to the back of the store to answer the telephone. In the meantime, Seawood purchased a set of glasses from a clerk in the store by the name of Mary A. Jarrett, who later testified she saw Ingram with a tray of rings in his hand. Mr. Thomas started to the front of the store, and defendant Ervin stepped in front of him and handed him a Mother's Day card with a dollar bill to pay for it. Mr. Thomas told his wife to give Ervin change. Mr. Thomas testified:

> "Joe Cecil Ingram turned to go out the front door and I went over to look at the show case. I looked in the show case and there was a whole tray of rings missing, and Joe Cecil Ingram had gone out the front door. He had left hurriedly. There was no one else at this ring counter at that time except Joe Cecil Ingram, and I had him in my vision except for the two times that Ervin stepped in front of me. There were eleven rings missing, and they had a total valuation of approximately $878.00. No one paid me for these rings and I did not give anyone permission to remove them."

Ervin and Seawood remained in the store until the police arrived shortly thereafter. Roy Wilson, a truck driver, testified that he picked up Ingram sometime after 9:00 o'clock A.M. on 3 May, 1967 at Clement's Store near Cherryville, and let him out on High-

way 74. Other evidence placed the point where Wilson picked up Ingram to be about a mile outside Cherryville.

Defendant Ingram offered Geraldine McCaskill as a witness, and she testified, in substance, that on 3 May 1967 Ingram was traveling with her from Washington, D. C. to Charlotte. They arrived in Cherryville about one or two o'clock in the afternoon. They were on the way to Charlotte from Washington at around 9:00 o'clock. Defendants offered no other evidence. Defendant Ingram was later arrested in Charlotte.

The jury returned a verdict, as to each defendant, of guilty of larceny of goods of a value of more than $200.00. From judgment entered on the verdict, defendants appealed.

*Attorney General Bruton and Staff Attorney Andrew A. Vanore, Jr., for the State.*

*Mullen, Holland & Harrell and Thomas H. Morgan for defendants.*

BRANCH, J. The record in this case does not show what disposition, if any, was made of the charges of felonious breaking and entering. Defendants' case on appeal states that each defendant was charged in a bill of indictment with the crime of larceny of goods of the value of more than $200.00. The record fails to show an indictment charging larceny of goods of the value of more than $200.00 against defendant Otto Seawood, Jr. The verdict of the jury as to Otto Seawood, Jr., was guilty of larceny of goods of value of more than $200.00.

In the case of *State v. Whitaker,* 89 N.C. 472, the Court, speaking to the insufficiency of the verdict as a basis for judgment, said:

"... It is not sufficiently responsive to the issue; and whenever a verdict is imperfect, informal, insensible, *or one that is not responsive to the indictment,* the jury may be directed to reconsider it with proper instructions as to the form in which it should be rendered. 1 Arch. Cr. Prac. & Pl., 176, note 4; *State v. Arrington,* 7 N.C. 571. (Emphasis added).

"But if such a verdict is received by the court and recorded, it would be error to pronounce judgment upon it. The most regular course would be to set aside the verdict and order a *venire de novo.*"

The Court considered the same point in *State v. Brown,* 248 N.C. 311, 103 S.E. 2d 341, where the defendant was charged under an indictment with unlawful possession of intoxicating liquors con-

trary to the form of the statute, and the jury returned a verdict of guilty of possession. Here, the Court stated:

> "It appears upon the face of the record proper that the verdict is insufficient to support a judgment. *S. v. Lassiter*, 208 N.C. 251, 179 S.E. 891. See also *S. v. Shew*, 194 N.C. 690, 140 S.E. 621; *S. v. Barbee*, 197 N.C. 248, 148 S.E. 249. . . .
>
> ". . . the verdict 'Guilty of possession' is without specific reference to the charge, and is insufficient to support a judgment; and defendant is entitled to a *venire de novo.*"

In the instant case the judgment returned was not responsive to the indictment and would not support *any* judgment. The verdict neither refers to the indictment nor uses language to show a conviction of the crime charged in the indictment. The court should not have received the verdict, but since the verdict was received, the verdict and judgment must be vacated. The Solicitor, if he so elects, may send a bill of indictment as to Otto Seawood, Jr., charging larceny of goods of the value of more than $200.00.

Before pleading to the bill of indictment, defendants moved to quash the bills for failure to charge the crimes of larceny of goods of a value of more than $200.00. The bills attacked described the property alleged to have been stolen, taken and carried away as "the merchandise, chattels, money, valuable securities and other personal property, located therein, of the value of $878.25 of the goods, chattels and money of the said Henry J. Thomas."

In the case of *State v. Caylor*, 178 N.C. 807, 101 S.E. 627, the defendant was indicted for larceny of lumber of the value of $200.00, the property of A. T. Dorsey. In holding that the property was sufficiently described in the indictment, the Court stated:

> "The description of an indictment must be in the common and ordinary acceptation of property, and with certainty sufficient to enable the jury to say that the article proved to be stolen is the same, and to enable the court to see that it is the subject of larceny, and also to protect the defendant in any subsequent prosecution for the same offense."
>
> "The rule is that 'where raw material has been exchanged to some extent by labor, it may nevertheless still be called by the name of the material, provided it has not been wrought into a new substance with a specific name to designate it. When, however, the product has a specific or distinguishing name, that name must be used to describe it.' "

Again considering an indictment for stealing "fifty pounds of flour, of the value of sixpence," this Court in the case of *State v.*

*Harris,* 64 N.C. 127, held that the description of the property was adequate, and stated: "The object of describing property stolen, by its quality and quantity, is that it may appear to the court to be of value. The object of describing it by its usual name, ownership, etc., is to enable the defendant to make his defense, and to protect himself against a second conviction."

The case of *State v. Campbell,* 76 N.C. 261, presented the question of whether the proof was at variance from the indictment for larceny. In holding that the proof and indictment were not at variance, the Court states:

> "The description in an indictment must be in the common and ordinary acceptation of property and with certainty sufficient to enable the jury to say that the article proved to be stolen is the same, and to enable the court to see that it is the subject of larceny and also to protect the defendant by pleading *autre fois convict* or *autre fois acquit* in the event of future prosecution for the offense, so that there may be no doubt of its identity; and the evidence must substantially correspond with the description in the indictment. . . . The description must still be in a plain and intelligible manner and must correspond to the different forms of existence in which the same article is found. In its raw or unmanufactured state it may be described by its ordinary name, but if it be worked up into some other forms, etc., when stolen, it must be described by the name by which it is generally known."

The defendant contended that the indictment was defective in the case of *State v. Patrick,* 79 N.C. 655, because the property alleged to have been stolen in the bill of indictment was insufficiently described. The bill of indictment described the property as "one pound of *meat* of the value of five cents." The Court, holding the indictment defective, stated: ". . . in an indictment for larceny, the property which is alleged to have been stolen should be described with reasonable certainty; and a charge of stealing *meat* which applies only to the flesh of all animals used for food, but in a general sense, to all kinds of provisions, is too vague and uncertain. . . . Such articles have more specific names in commerce and in the country, which ought to be employed in criminal proceedings."

In the case of *State v. Strickland,* 243 N.C. 100, 89 S.E. 2d 781, the indictment charged larceny and receiving stolen goods knowing them to have been stolen, which described the property in each count as "a quantity of meat," of a specified value belonging to a designated company. In holding this to be an insufficient description of

the property to meet constitutional requirements, the Court, speaking through Parker, J. (now C.J.) said:

> "Art. I, Sec. 11, of the North Carolina Constitution, guarantees to every person charged with crime the right to be informed of the accusation against him. This constitutional guarantee is a substantial redeclaration of the common law rule requiring the charge against the defendant to be set out in the warrant or indictment with such exactness that the defendant can have a fair and reasonable opportunity to prepare his defense, can avail himself of his conviction or acquittal as a bar to subsequent prosecution for the same offense, and can enable the court, on conviction, to pronounce sentence according to law. *S. v. Jenkins,* 238 N.C. 396, 77 S.E. 2d 796; *S. v. Green,* 151 N.C. 729, 66 S.E. 564; *S. v. Lunsford,* 150 N.C. 862, 64 S.E. 765; 42 C.J.S., Indictments and Informations, Sec. 90. This right of the accused is a substantital right that may not be ignored, and not a mere technical or formal right. *People v. Green,* 368 Ill. 242, 13 N.E. (2d) 278, 115 A.L.R. 348."

Neither does G.S. 15-143, which enables a defendant to call for a bill of particulars cure a defect in the bill of indictment. This section applies only when further information not required to be set out in the indictment is desired. *State v. Cox,* 244 N.C. 57, 92 S.E. 2d 413.

It is of interest to note that most of the cases referred to above concern motions to arrest judgment. A motion to arrest judgment and motion to quash serve the same purpose. A motion to arrest has a somewhat broader scope, since it may be directed to patent defects in the pleadings, verdict, or other part of the record. The motion to quash is directed only to patent defects in the pleadings. *State v. Cochran,* 230 N.C. 523, 53 S.E. 2d 663.

The proof offered by the State showed that the personal property alleged to have been stolen and carried away consisted of eleven rings with a total value of approximately $878.00. The description of this property by the general and broadly comprehensive words, "merchandise, chattels, money, valuable securities and other personal property" is not sufficient. The property was not described in the name generally applied to it in the trade, and in common language. Nor was the description sufficient to enable the jury to say that the article proved to be stolen is the same, or such that the defendant could avail himself of his conviction or acquittal as a bar to subsequent prosecutions for the same offense.

The trial court erred in not quashing the bills of indictment which sought to charge felonious larceny. Although these indict-

ments are fatally defective so as to vacate the verdict and judgment below, they will not serve to bar further prosecution if the Solicitor elects to proceed upon a sufficient bill of indictment. *State v. Barnes,* 253 N.C. 711, 117 S.E. 2d 849; *State v. Strickland, supra; State v. Miller,* 231 N.C. 419, 57 S.E. 2d 392.

Reversed.